[No. AO22801. First Dist., Div. Four. Nov. 10, 1983.]

In re DAVID PAEZ on Habeas Corpus.

COUNSEL

Michael Satris, Donald Specter, and Charles S. Bishop for Petitioner.

John K. Van de Kamp, Attorney General, Robert R. Granucci, Herbert F. Wilkinson, John W. Runde and Ronald E. Niver, Deputy Attorneys General, for Respondent.

OPINION

**BALLACHEY, J.***—Petitioner David Paez seeks restoration of good time which was forfeited under a statutory provision not in effect at the time he was convicted. ▪ He argues that the application to him of the statute increasing the amount of time which may be forfeited for misconduct constitutes a violation of the prohibition against ex post facto laws. We agree.

---

*Assigned by the Chairperson of the Judicial Council.

Petitioner was committed to state prison for an offense committed before January 1, 1983. He was charged with a disciplinary rule violation on January 19, 1983, for involvement in a physical altercation. He was found guilty and assessed 150 days behavior credit loss pursuant to Penal Code section 2932, subdivision (a).[1]

*Amendment to section 2932*

Prior to January 1, 1983, a state prisoner could reduce his term of confinement by one-third by earning credits for good behavior and program participation, referred to collectively as "conduct credits." (See former § 2931; see *People* v. *Sage* (1980) 26 Cal.3d 498, 501 [165 Cal.Rptr. 280, 611 P.2d 874].) Section 2932 provided for the forfeiture of credits either by failure to participate in work programs or by specified acts of misconduct. It stated that: "Not more than 90 days of good behavior credit nor more than 30 days of participation credit may be denied or lost during any eight-month period during which the misbehavior or failure to participate took place." (Former § 2932, subd. (a).) Under section 2931 as it read prior to January 1, 1983, petitioner alleges he would have been subject to a loss of no more than 30 days for the conduct of which he was found guilty.

Effective January 1, 1983, the Legislature enacted a substantial revision of the scheme by which prisoners could earn and forfeit conduct credits. Prisoners may now reduce their term by as much as one-half by participation in a credit-qualifying program. (§ 2933.) Prisoners committed prior to January 1, 1983, may opt into the new credit granting system upon acceptance by the Department of Corrections of a waiver of the right to receive time credits under section 2931, which remains in effect for these prisoners. (§ 2934.) Prisoners committed on or after January 1, 1983, are automatically within the new system for obtaining credits. (§ 2931, subd. (d).)

As to forfeiture of credits, the new legislation provides, inter alia, for an increased forfeiture: up to 180 days may be lost for misconduct amounting to a felony, 90 days for misconduct amounting to a misdemeanor, and 30 days for misconduct defined as a "serious disciplinary offense" under departmental regulations. (§ 2932, subd. (a).) The forfeiture provisions of the new section 2932 apply to prisoners accumulating credits under either section 2931 (the old system) or 2933 (the new system). (*Ibid.*)[2] Thus, a prisoner convicted before January 1, 1983, may opt not to participate in the new system for obtaining conduct credits but he has no choice as to whether to

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]Subdivision (h) of section 2932 provides that the new penalty provisions shall not result in the "revocation of credits attributable to that portion of the prisoner's sentence served prior to January 1, 1983."

participate in the new system for forfeiting conduct credits. The old system as to forfeiture no longer exists.

### Applicability of the ex post facto clause

■ The imposition of punishment which, after commission of a crime, has been increased or made more burdensome is barred by the ex post facto clause of the Constitutions of both the United States (art. I, § 10, cl. 1) and State of California (art. I, § 9). (*In re Stanworth* (1982) 33 Cal.3d 176, 180 [187 Cal.Rptr. 783, 654 P.2d 1311].)

In *Weaver* v. *Graham* (1981) 450 U.S. 24 [67 L.Ed.2d 17, 101 S.Ct. 960], the United States Supreme Court considered whether legislation reducing the amount of conduct credits a prisoner could earn was ex post facto as to prisoners convicted before the legislative change. In concluding unanimously that it was, the court explained at page 31 [67 L.Ed.2d at p. 24]: "The respondent maintains that Florida's 1978 law altering the availability of gain time is not retrospective because, on its face, it applies only after its effective date. [Citation.] This argument fails to acknowledge that *it is the effect, not the form, of the law that determines whether it is ex post facto. The critical question is whether the law changes the legal consequences of acts completed before its effective date.* In the context of this case, this question can be recast as asking whether Fla. Stat. § 944.275 (1) (1979) applies to prisoners convicted for acts committed before the provision's effective date. Clearly, the answer is in the affirmative. The respondent concedes that the State uses § 944.275 (1), which was implemented on January 1, 1979, to calculate the gain time available to petitioner, who was convicted of a crime occurring on January 31, 1976. Thus, the provision *attaches legal consequences to a crime committed before the law took effect.*" (Italics added, fns. omitted.)

The Attorney General argues that the essential difference between *Weaver* and the instant case is the difference between reducing the amount of credits that can be earned and increasing the amount of forfeiture upon misconduct. In the latter situation, it is conduct *after* conviction which is being punished. In the former, regardless of conduct after conviction, punishment is effectively increased. This difference, while it exists, does not defeat the ex post facto argument. Even though forfeiture involves misconduct after conviction it also is a "legal consequence" which "attaches" to the crime for which the prisoner is incarcerated for it changes the amount of time the prisoner must serve for that crime before being released.

By its citation and discussion of *Greenfield* v. *Scafati* (Mass. 1967) 277 F.Supp. 644, summarily affirmed (1968) 390 U.S. 713 [20 L.Ed.2d 250,

88 S.Ct. 1409], the *Weaver* court implicitly rejected the distinction the At-
torney General makes. (*Id.*, 450 U.S. at p. 34 [67 L.Ed.2d at p. 26].) In
*Greenfield,* a three judge court struck down as ex post facto a statutory
provision triggered by an act of misconduct. Under this provision, the right
to earn good time credits was "forfeited" for six months following a parole
violation. Since such a "forfeiture" was not included in the law when the
petitioner was convicted, the "forfeiture" was ex post facto as to him even
though the parole violation occurred after its enactment.

The same result was reached by the Fifth Circuit Court of Appeals in
considering a Louisiana statute which revoked previously earned good time
credits when a prisoner violated his parole. The court held that application
of the statute to a prisoner originally sentenced before the adoption of the
statute constituted an ex post facto violation. "The crucial issue here . . .
is not that petitioner had notice that he would forfeit his accrued good time
if he violated parole, but that . . . the forfeiture of good time is a sanction
that extends the time remaining on petitioner's original sentence. The prac-
tical effect is a statutory increase in punishment for the first offense, enacted
subsequent to the commission of the offense." (*Beebe* v. *Phelps* (5th Cir.
1981) 650 F.2d 774, 776.)

■■■ The Attorney General urges this court to view the sanctions im-
posed on petitioner as punishment for a new act of misconduct. He likens
the sanctions to punishment for in-prison conduct such as escape (§ 4530),
possession of a weapon (§ 4502) or assault by a prisoner (§§ 4500, 4501,
4501.5). In these situations the sanctions act to the detriment of the inmate
and increase the period of time he must serve in prison; yet, there is no ex
post facto problem.

The answer to this argument is obvious. If the state had chosen to charge
petitioner with a criminal assault and had proceeded to trial, conviction and
sentence on this new offense, the present ex post facto problem would not
exist. The state, however, chose the course of administrative sanctions. The
state is not punishing a new crime since no new crime was charged. It is
increasing the punishment for a prior crime by taking away credits earned
since January 1, 1983, and depriving petitioner of the opportunity to earn
a certain number of additional credits. Since the prior offense occurred
before the additional sanctions were enacted, the amendment imposing these
sanctions is ex post facto as applied to petitioner. As was succinctly ob-
served in *Stanworth*: "The tenor of *Weaver* seems unmistakable: prejudicial
changes in punishment enacted after commission of a crime are suspect on
ex post facto grounds." (*In re Stanworth, supra,* 33 Cal.3d 176, 181.)

The Department of Corrections is hereby directed to amend petitioner's commitment record to conform with this opinion and to reflect the new commitment.

Caldecott, P. J., and Poché, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 19, 1984.