[Crim. No. 23684. Sept. 26, 1985.]

In re RUDY J. RAMIREZ on Habeas Corpus.

## Counsel

Michael Satris, under appointment by the Supreme Court, Donald Specter and Constance Bakkerud for Petitioner.

John K. Van de Kamp, Attorney General, Robert R. Granucci, Ronald E. Niver and Sharlene A. Honnaka, Deputy Attorneys General, for Respondent.

## Opinion

LUCAS, J.—The issue presented is whether a new statutory plan for awarding sentence reduction credits may be applied, without violation of the ex post facto clauses of the California[1] or federal[2] Constitutions, to prisoners who committed crimes before the effective date of the new scheme. We conclude that it may.

### I. *Statutory Provisions*

Before 1983, former Penal Code[3] sections 2931 and 2932 governed the award of sentence reductions to prisoners. Under former section 2931, pris-

---

[1]Article I, section 9.

[2]Article I, section 10.

[3]All further references are to this code.

oners had their sentences reduced both by refraining from certain enumerated offenses and by participating in approved "work, educational, vocational, therapeutic or other prison activities." By refraining from enumerated offenses, prisoners received "good behavior credits" of three months for each eight months served. By participating in the approved activities prisoners received "participation credits" of one month for each eight served.

Both good behavior and participation credits were subject to forfeiture under former section 2931. By committing one of the proscribed acts, a prisoner lost 15, 30, or 45 days of good behavior credit depending upon the seriousness of the act. If a prisoner failed to participate in the approved programs, he lost 30 days of participation credit. Under former section 2932, not more than 90 days of good behavior credit nor more than 30 days of participation credit could be forfeited in any 8-month period.

On January 1, 1983, a new plan (hereafter the 1982 amendments) for awarding sentence reduction credits became effective.[4] The new plan applies to prisoners who committed crimes after January 1, 1983, but all other prisoners may waive their right to be governed by the old system and elect the new system. In broad terms, the new method eliminates good behavior and participation credits but provides "worktime credits" of six months for each six months served for "performance in work assignments and performance in elementary, high school, or vocational education programs."

Significantly, for our purposes, the 1982 amendments also change the old plan as applied to prisoners who do not elect to be governed by the new plan. First, a prisoner may lose accumulated good behavior credits for "any act . . . which . . . could be prosecuted . . . as a misdemeanor or a felony, or any act of misconduct described as a serious disciplinary infraction by the Department of Corrections." (§ 2931.) Under the old system only particular enumerated acts resulted in forfeiture. Second, the new provisions increase the credits subject to forfeiture for misconduct to 180 days for felonies, 90 days for misdemeanors, and 30 days for serious disciplinary infractions. (§ 2932.) Third, a "serious disciplinary infraction" committed during an activity for which participation credits are awarded, shall be deemed a failure to participate, subjecting the prisoner to a loss of participation credits as well as good behavior credits. (*Ibid.*) The prior law did not provide for the forfeiture of participation credits in such a situation. Finally, the new plan eliminates the limit on credits subject to forfeiture during any eight-month period. (*Ibid.*) No provision of the 1982 amendments affects credits relating to time served before 1983.

---

[4]Statutes 1982, chapter 1234.

## II. *Facts*

Petitioner, Rudy J. Ramirez, is imprisoned for a crime committed before January 1, 1983. On that date he was incarcerated at the California Men's Colony at San Luis Obispo, and he has not elected to be governed by the new system. In January 1983 he was charged with altering the paperwork relating to a television set, resulting in the loss under the new plan of 95 days of behavior credits. In an administrative appeal the loss was reduced to 48 days. Under the old plan, petitioner would have been subject to a maximum forfeiture of 15 days.

In May 1983 petitioner filed a petition for habeas corpus in the superior court challenging the application of the new system to him. That petition was denied on the ground that petitioner had not exhausted his administrative remedies. The Court of Appeal affirmed. We remanded this case to the Court of Appeal with instructions to consider the constitutionality of the 1982 amendments in light of *Weaver* v. *Graham* (1981) 450 U.S. 24 [67 L.Ed.2d 17, 101 S.Ct. 960]. The Court of Appeal, in a published opinion, held that the 1982 amendments may be applied to petitioner without violation of the state or federal ex post facto clauses. We granted the petition for hearing to resolve the conflict between the Court of Appeal decision in this case and the decision in *In re Paez* (1983) 148 Cal.App.3d 919 [196 Cal.Rptr. 401].

## III. *Discussion*

The Florida statute at issue in *Weaver* reduced the amount of good time credits prisoners could earn but did not disturb credits earned prior to its effective date. The Florida scheme did not contemplate additional credit for work assignments but did provide discretionary credits for "some outstanding deed" or particularly skillful or industrious performance of work assignments. The Supreme Court of the United States held the statute invalid as ex post facto. Justice Marshall, writing for the majority, observed that an ex post facto law "must be retrospective . . . and it must disadvantage the offender . . . ." (*Weaver, supra,* 450 U.S. at p. 29 [67 L.Ed.2d at p. 23].)

Florida contended that the statute was not retrospective because it affected only future credits and because the good time system was not an integral part of the prisoner's sentence. The Supreme Court concluded instead that the statute was retrospective because it changed the "legal consequences" of crimes committed before its effective date and was part of the prisoner's "punitive conditions" even though not technically part of his sentence. (*Weaver, supra,* 450 U.S. at pp. 31, 32 [67 L.Ed.2d at pp. 24, 25].) The

court found that the prisoner was disadvantaged because he earned less credit for the same conduct. The Supreme Court also rejected Florida's argument that the new scheme was not disadvantageous because it provided the opportunity to earn more credits than under the old scheme on the grounds that to earn such credits the prisoner must perform in a superior fashion and that such awards were discretionary in any event. (*Id.*, at p. 35 [67 L.Ed.2d at p. 27].)

We addressed the question of ex post facto laws in a similar context in *In re Stanworth* (1982) 33 Cal.3d 176 [187 Cal.Rptr. 783, 654 P.2d 1311]. There we found ex post facto the application of the Determinate Sentencing Act[5] parole guidelines to prisoners sentenced under the earlier Indeterminate Sentence Law.[6] In deciding whether the new system was disadvantageous to the prisoner, we noted, following *Weaver,* that the issue was not the actual application to the petitioner, "but whether the *standards* . . . have been altered to [the prisoner's] detriment." (*Id.*, at p. 186, italics added.)

In *Paez,* the Court of Appeal held that the 1982 amendments, which are at issue here, are ex post facto laws. The Attorney General raised two contrary arguments. First, he argued that *Weaver* is distinguishable because the credits there were reduced regardless of the prisoner's good conduct. Under the 1982 amendments the credits for good behavior remain the same; only subsequent misconduct results in the new sanctions. Second, he contended that because the credit forfeitures were punishments for improper prison conduct rather than additional sanctions for the original crime, the new system was not retrospective. The Court of Appeal rejected both arguments holding, as to the first, that the credit system was a legal consequence of the original crime, even if the system's deleterious *effect* was only triggered by later events. (*Paez, supra,* 148 Cal.App.3d at p. 922.) The court likewise rejected the Attorney General's second argument on the ground that the forfeiture of credits in no way precluded a criminal prosecution for the same action. Because the state did not charge the prisoner with a new crime, the forfeiture could not be punishment for that crime; rather it was an administrative sanction that must relate to the original crime. (*Id.*, at p. 923.)

A. *Disadvantageous*

The first issue is whether the 1982 amendments are disadvantageous to petitioner. If we were unencumbered we would be tempted to find that any disadvantage stems from petitioner's own action and that the 1982 amend-

---

[5]Section 1170 et seq.
[6]Former section 1168, repealed effective January 1, 1977.

ments are not disadvantageous on their face. *Weaver,* however, held that a prisoner's control over the increased sanctions of the new plan is irrelevant to whether that plan is deemed disadvantageous. (*Weaver, supra,* 450 U.S. at p. 33 [67 L.Ed.2d at p. 25].) In *Stanworth,* we analyzed the new system not by examining whether the prisoner had actually been disadvantaged but by determining whether the system itself had been altered to the prisoner's detriment. (*Stanworth, supra,* 33 Cal.3d at p. 186.)

Turning to the 1982 amendments, as we have stated, (1) the acts that may result in a forfeiture of good behavior credits have been expanded, (2) the amount of credits forfeitable for disciplinary violations has been increased, (3) an act punishable by loss of good behavior credits may now sometimes result in a loss of participation credits as well, and (4) the limit on the credits forfeitable over an eight-month period has been deleted. All of these changes, of course, are disadvantageous to petitioner. Accordingly, we conclude that the 1982 amendments meet the first part of the *Weaver* test for finding a law ex post facto.

B. *Retrospective*

The second part of the *Weaver* test is whether the 1982 amendments are retrospective. ■ For a law to be retrospective, "it must apply to events occurring before its enactment." (*Weaver, supra,* 450 U.S. at p. 29 [67 L.Ed.2d at p. 23].) A retrospective law violates the ex post facto clauses when it "substantially alters the consequences attached to a crime already completed, and therefore changes 'the quantum of punishment.' " (*Id.,* at p. 33 [67 L.Ed.2d at p. 25], citing *Dobbert* v. *Florida* (1977) 432 U.S. 282 [53 L.Ed.2d 344, 97 S.Ct. 2290].)

■ We conclude that the 1982 amendments are not retrospective and therefore do not violate the ex post facto clauses. Petitioner, citing *Paez,* contends that the 1982 amendments relate to the original offense, not to the infraction committed in prison. We disagree. It is true that the 1982 amendments apply to petitioner only because he is a prisoner and that he is a prisoner only because of an act committed before the 1982 amendments. Nonetheless, the increased sanctions are imposed solely because of petitioner's prison misconduct occurring after the 1982 amendments became effective. In other words, the 1982 amendments apply only to events occurring *after* their enactment. If any aspect of prison life is unconnected to a prisoner's original crime, it would seem to be the sanctions for his misconduct while in prison. Accordingly, the 1982 amendments, which change the sanc-

tions for that misconduct, do not relate to petitioner's original crime and are not retrospective under *Weaver*.

The *Weaver* court held that the opportunity to earn good time credits was "one determinant of petitioner's [initial] prison term—and that his effective sentence is altered once this determination is changed." (*Weaver, supra,* 450 U.S. at p. 32 [67 L.Ed.2d at p. 25].) There is a critical difference between a diminution of the ordinary rewards for satisfactory performance of a prison sentence—the issue in *Weaver*—and an increase in sanctions for *future misbehavior* in prison—which is at issue here. Here, petitioner's opportunity to earn good behavior and participation credits is unchanged. All that has changed are the sanctions for prison misconduct. Unlike *Weaver,* petitioner's effective sentence is not altered by the 1982 amendments unless petitioner, by his own action, chooses to alter his sentence. We cannot conclude that sanctions for future prison misconduct that *might* occur were "one determinant" of petitioner's *initial* sentence.

Even if we were to accept petitioner's argument that the 1982 amendments relate to his initial offense, we would still hold that the ex post facto clauses are not violated. Although *Weaver* held that the ex post facto clauses apply to "punitive conditions outside the sentence" (*Weaver, supra,* 450 U.S. at p. 32 [67 L.Ed.2d at p. 25]), they do not apply to *any* change in prison conditions but only those changes that increase the punishment (*id.,* at p. 29 [67 L.Ed.2d at p. 23]). We find that the 1982 amendments simply change one aspect of petitioner's life in prison. The 1982 amendments neither increase petitioner's maximum sentence nor reduce the good behavior credits he can earn. While the distinction between "punitive conditions" (which implicate the ex post facto clauses) and other prison conditions is often not salient, we believe that the 1982 amendments do not affect petitioner's punitive conditions. As an administrative matter, a prison may well be able to function under a plan in which different classes of prisoners are entitled to different levels of rewards for good conduct. It is, however, something entirely different to have a prison population subject to different disciplinary rules and penalties for violations in prison. From the standpoint of prison order, it is simply infeasible to run a prison in which some inmates are wholly or partially immune from punishment for conduct for which others receive serious penalties.[7]

No authority compels us to extend *Weaver* to the future-prison-misconduct context. The only case cited as being in point is *Greenfield* v. *Scafati*

---

[7]Thus, for example, if the new disciplinary proscriptions may constitutionally apply only to new prisoners, petitioner's cellmate—if recently admitted—might lose time credit for stealing property of another inmate (Pen. Code, § 484 et seq.) or for selling a substance which he falsely represented was heroin (see Health & Saf. Code, § 11382), while petitioner could be subjected to no loss of credit for the same misconduct.

(D.Mass. 1967) 277 F.Supp. 644, affd. *per curiam* (1968) 390 U.S. 713 [20 L.Ed.2d 250, 88 S.Ct. 1409]. There a three-judge district court enjoined the operation of a Massachusetts statute (1965 Mass. Acts, ch. 884) as far as persons sentenced for crimes committed before its effective date were concerned. In brief, the statute deprived prisoners returned to prison for parole violations of the automatic credit for presumed good behavior during the first six months after return to custody. The three-judge court held that the statute disadvantaged persons who had committed crimes before its effective date by converting an "unqualified parole" into a parole "cum onere, i.e. subject to ch. 884." In other words, before the passage of the statute, a parolee who violated his parole faced revocation but, once back in prison, was on a par with other inmates as far as credits for the next six months were concerned. The statute, however, created an additional penalty for a parole violation. For two reasons we do not consider *Greenfield* controlling here: (1) the focus of *Greenfield* was not on the effect on prison administration of a holding that the statute was invalid, but on conduct outside the prison walls; (2) invalidating the statute as to certain prisoners did not have the effect of immunizing their future conduct from sanctions for prison rule violations. As far as one can tell, they remained subject to loss of credits for "misbehavior."

In *Weaver,* the United States Supreme Court stated that, "a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." (*Weaver, supra,* 450 U.S. at p. 32 [67 L.Ed.2d at p. 25].) Nonetheless, we reject the notion that the sanctions for possible future prison misconduct constitute a "significant factor" for either the trial judge or defendant. We conclude that the frequency and seriousness of a defendant's future prison misconduct is too contingent and remote to influence significantly either defendants or trial courts before plea and sentencing. (See *id.,* at p. 32.)

We thus determine that the 1982 amendments are not retrospective and therefore do not violate the ex post facto clauses. Our holding is bolstered by the policy behind the ex post facto clauses that criminal laws must give fair warning to those who may fall within their ambit. (*Weaver, supra,* 450 U.S. at p. 28 [67 L.Ed.2d at p. 22].) Here, of course, petitioner had fair warning that if he committed certain offenses after January 1, 1983, he would be subject to increased sanctions.

To the extent *In re Paez, supra,* 148 Cal.App.3d 919, is in conflict with this opinion, that case is disapproved.

The writ of habeas corpus is denied.

Mosk, J., Broussard, J., Kaus, J., and Grodin, J., concurred.

**REYNOSO, J.**—I dissent. In dealing with the issue of retrospectivity, the United States Supreme Court in *Weaver* v. *Graham* (1981) 450 U.S. 24, at page 31 [67 L.Ed.2d 17, at p. 24, 101 S.Ct. 960], stated: "The critical question is whether the law changes the legal consequences of acts completed before its effective date. In the context of this case, the question can be recast as asking whether [the state statute] applies to prisoners convicted for acts committed before the provision's effective date. Clearly, the answer is in the affirmative." I find this holding squarely on point and controlling.

The majority seeks to distinguish *Weaver* on two grounds. First, it concludes that the 1982 amendments are not retrospective because they apply only to events occurring after their enactment. The majority contends that any increased sanctions in the 1982 amendments relate to a subsequent prison infraction, not to the original offense. Second, the majority seems to hold that the ex post facto clauses do not apply because the 1982 amendments do not increase the petitioner's maximum sentence nor reduce good behavior credits.

The majority is wrong on both counts.

First, the majority fails to acknowledge that sanctions are also one determinant of petitioner's total prison term. Once this determinant is changed, petitioner's effective sentence is altered. That is what *Weaver* v. *Graham* is all about. (*Weaver,* 450 U.S. at p. 32 [67 L.Ed.2d at p. 25].) The incorrectness of the majority's line of analysis is demonstrated by the contrary and correct analysis of *Greenfield* v. *Scafati* (D.Mass. 1967) 277 F.Supp. 644, summarily affirmed (1968) 390 U.S. 713 [20 L.Ed.2d 250, 88 S.Ct. 1409], cited with approval in *Weaver.*

In *Greenfield,* the state Legislature amended a statute regulating "good conduct" deductions from sentences, making violation of parole grounds for forfeiture of good conduct deductions. It also decided to apply the amended statute to persons, such as the petitioner, who were already under sentence.

In that case, the petitioner acted in violation of his parole *after* the statute was amended. Accordingly, the amended statute would not have altered the petitioner's effective sentence unless petitioner, by his own actions, chose to alter his sentence by violating parole. The petitioner also had fair warning that if he committed certain parole violations, he would be subject to increased sanctions. Despite these factors, the court concluded that application of the amended statute to the petitioner was unconstitutional as an ex post facto law. It reasoned that the difference between mere termination of parole under the former statute and an increased punishment under the new statute was substantial. "To effect this by legislation enacted after the offense for which sentence was imposed cannot be constitutionally supported." (*Greenfield,* 277 F.Supp. at p. 646.)[1]

Similarly, our focus should be on the petitioner's offense in this case. The state is not punishing petitioner for a new crime by proceeding to trial on the charge of altering paperwork relating to a television. Instead, the state is increasing the punishment for an offense committed before the additional sanctions were enacted. As we stated previously, "[t]he tenor of *Weaver* seems unmistakable: prejudicial changes in punishment enacted after commission of a crime are suspect on ex post facto grounds." (*In re Stanworth* (1982) 33 Cal.3d 176, 181 [187 Cal.Rptr. 783, 654 P.2d 1311].)

Second, the majority finds that the 1982 amendments' increased sanctions do not constitute "punitive conditions outside the sentence." (*Weaver,* 450 U.S. at p. 32 [67 L.Ed.2d at p. 25].) The Supreme Court in *Weaver* found that a reduction in a gain-time provision changed the quantum of punishment. (*Id.,* at p. 33 [67 L.Ed.2d at p. 25].) It is difficult to understand why increasing sanctions for prison misconduct would not also be regarded as a punitive condition.

To bolster its position, the majority raises the paper tiger of prison administration, claiming that inconsistent disciplinary rules for prison infractions would result in immunity from punishment for some prisoners. Not true! Nothing prevents prison authorities from enforcing a uniform disciplinary standard by resort to criminal prosecution of all inmates convicted for acts committed before January 1, 1983, for any criminal act they commit while in prison.

In summary, it seems clear that the 1982 amendments are retrospective when applied to an offender such as petitioner who was convicted before

---

[1]See also *Beebe* v. *Phelps* (5th Cir. 1981) 650 F.2d 774, 776 (revised statute that revoked accrued "good time" for violation of parole held unconstitutional as applied to petitioner who was originally sentenced before enactment of statute).

the amendments' effective date.[2] Since the amendments disadvantage the petitioner, I would hold them unconstitutional as an ex post facto law.

Bird, C. J., concurred.

Petitioner's application for a rehearing was denied October 25, 1985.

---

[2]See, e.g., *Knuck* v. *Wainwright* (11th Cir. 1985) 759 F.2d 856, 859 (change in administrative construction of gain-time statute was retrospective as applied to petitioner whose offense occurred four years before the change in interpretation); *Burnside* v. *White* (8th Cir. 1985) 760 F.2d 217, 220 (amended parole statute was retrospective as applied to petitioner convicted for acts committed before the statute's effective date).