[No. A079217. First Dist., Div. Two. Sept. 4, 1998.]

In re LOVELL LOMAX on Habeas Corpus.

[No. A080380. First Dist., Div. Two. Sept. 4, 1998.]

In re KENNETH JACKSON on Habeas Corpus.

640

## COUNSEL

Barry K. Newman, under appointment by the Court of Appeal, for Petitioner in No. A079217.

Arnold Erickson, under appointment by the Supreme Court, for Petitioner in No. A080380.

Daniel E. Lungren, Attorney General, Peter J. Siggins, Assistant Attorney General, Bruce M. Slavin and Gregory Mangani, Deputy Attorneys General, for Respondent.

## OPINION

**KLINE, P. J.**—These consolidated appeals by the Attorney General involve the identical question of whether a new regulation of the Department of Corrections, which prevents prisoners from obtaining reinstatement of conduct/work credits that had been forfeited for misconduct, violates the ex post facto prohibition when applied to prisoners whose misconduct was committed before the regulation was promulgated. In both cases, the trial courts found a violation of the ex post facto clause. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Kenneth Jackson, an inmate at Pelican Bay State Prison, committed acts of misconduct in November 1993 and in June 1995, which were classified as division B offenses and resulted in forfeiture of 150 days of credits for each offense, for a total of 300 days forfeited. At the time Jackson committed these acts of misconduct, the Department of Corrections (Department) permitted inmates to apply for restoration of credits forfeited as a result of a

division B offense if they remained free of discipline for six months. In March 1996, however, the Department revised its regulations to prohibit the restoration of credits forfeited for serious disciplinary infractions, which include division A-1, A-2, B and C offenses. The new regulation was to take effect April 1, 1996, and was to apply to all inmates regardless of when they had forfeited credits. Inmates were, however, given a 30-day window period within which to apply 1 last time for restoration of credits for division A-1, A-2, B and C offenses. Jackson applied for restoration of credits after the 30-day window period had expired, and his application and appeal were denied, citing the amended regulation.

Lovell Lomax, an inmate at California Medical Facility, Vacaville, committed an act of misconduct in July 1995, which was classified as a division A-1 offense and resulted in forfeiture of 360 days of worktime credits. At the time Lomax committed the misconduct, the Department regulations permitted inmates to apply for partial restoration of credits forfeited as a result of a division A-1 offense if they remained free of discipline for one year. In March 1996, however, the Department revised its regulations to prohibit the restoration of credits forfeited for serious disciplinary infractions. The new regulation was to take effect on April 1, 1996, and to apply to all inmates regardless of when they had forfeited credits. There was, however, a 30-day window period within which to apply one last time for restoration of credits for division A-1, A-2, B and C offenses. Lomax applied within the window period, but it was determined that as of April 1, 1996, he was not eligible for restoration of any credit because he had not yet completed the required one-year discipline-free period. Accordingly, his request was denied.

Jackson and Lomax filed individual petitions for writ of habeas corpus, both of which were granted. In Jackson's case the court found: "[T]he change in regulations retroactively makes the punishment for the disciplinary violations more onerous in violation of the prohibition against ex post facto laws." In Lomax's case, the court found that Lomax "was disadvantaged by the enactment of the law in that his total prison sentence was affected by the amendment. Therefore, as the law was applied retrospectively and Petitioner was disadvantaged by the application, it violated the prohibition against ex post facto punishment."

## II. Argument

The Attorney General contends that the amendment of the Department's regulations had no effect on Jackson and Lomax's sentences and therefore did not violate the prohibition against ex post facto laws. An ex post facto law is " 'any statute [1] which punishes as a crime an

act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed . . . .' " (*Collins* v. *Youngblood* (1990) 497 U.S. 37, 42 [110 S.Ct. 2715, 2719, 111 L.Ed.2d 30], quoting *Beazell* v. *Ohio* (1925) 269 U.S. 167, 169-170 [46 S.Ct. 68, 69, 70 L.Ed. 216].) The inquiry is an objective one: "[I]t is the effect, not the form, of the law that determines whether it is *ex post facto*. The critical question is whether the law changes the legal consequences of acts completed before its effective date." (*Weaver* v. *Graham* (1981) 450 U.S. 24, 31 [101 S.Ct. 960, 965, 67 L.Ed.2d 17], fn. omitted.) ▮ Regulations have the force and effect of law and thus are subject to ex post facto prohibitions. (*People* v. *Armitage* (1987) 194 Cal.App.3d 405, 414 [239 Cal.Rptr. 515]; *Flemming* v. *Oregon Bd. of Parole* (9th Cir. 1993) 998 F.2d 721, 726.)

▮ The regulation in question was adopted pursuant to Penal Code section 2933, which was amended in 1995 to grant discretion to the Director of Corrections to decline to restore credits forfeited as a result of serious disciplinary infractions punishable by credit loss of more than 90 days. (Pen. Code, § 2933, subd. (c), as amended by Stats. 1995, ch. 557, § 2, eff. Jan. 1, 1996.) Before the 1995 amendment, section 2933 had required the Department under most circumstances to restore an inmate's forfeited credits if the inmate completed a certain period of time free of disciplinary offenses.[1] In response to the 1995 grant of discretion, the Department amended its regulations to provide: "No credit shall be restored for any serious disciplinary offense punishable by a credit loss of more than 90 days. These offenses include Divisions A-1, A-2, B and C." (Cal. Code Regs., tit. 15, § 3327, subd. (a)(1).)

The Attorney General maintains there is no ex post facto violation because credit restoration regulations are not punishment for criminal conduct, and prison disciplinary proceedings are not criminal proceedings. He relies primarily on *In re Ramirez* (1985) 39 Cal.3d 931 [218 Cal.Rptr. 324, 705 P.2d 897], which held that a statutory amendment that increased the penalties for prison misconduct did not violate the ex post facto clauses of the United States and California Constitutions. In *Ramirez*, the petitioner was

---

[1]The certainty of obtaining restoration of credits prior to the 1995 amendment distinguishes this case from *Hallmark* v. *Johnson* (5th Cir. 1997) 118 F.3d 1073, which found a Texas statutory change not violative of ex post facto provisions when it eliminated the Texas prison director's discretion to restore such credits. Relying on *California Dept. of Corrections* v. *Morales* (1995) 514 U.S. 499 [115 S.Ct. 1597, 131 L.Ed.2d 588], the Fifth Circuit held that the removal of what had been only a discretionary possibility of restoration was too attenuated and speculative an effect on punishment to constitute an ex post facto violation. (*Hallmark* v. *Johnson, supra,* 118 F.3d at pp. 1078-1079.)

imprisoned for a crime committed before January 1, 1983. On that date a new plan for awarding time credits became effective. The new plan, referred to as the 1982 amendments, increased the number of days to be forfeited for misconduct. In January 1983, the petitioner was charged with misconduct and as a result forfeited 48 days of credits. Under the old plan he would have been subject to a maximum forfeiture of 15 days.

The California Supreme Court concluded that although the amendments were disadvantageous to the petitioner, they were not retrospective: "[T]he increased sanctions are imposed solely because of petitioner's prison misconduct occurring after the 1982 amendments became effective. In other words, the 1982 amendments apply only to events occurring *after* their enactment." (*In re Ramirez, supra,* 39 Cal.3d at p. 936, italics in original.) "Unlike *Weaver* [v. *Graham, supra,* 450 U.S. 24], petitioner's effective sentence is not altered by the 1982 amendments unless petitioner, by his own action, chooses to alter his sentence." (*Id.* at p. 937.) The court further stated: "We find that the 1982 amendments simply change one aspect of petitioner's life in prison. The 1982 amendments neither increase petitioner's maximum sentence nor reduce the good behavior credits he can earn." (*Ibid.*)

The Attorney General concedes that *Ramirez* could be read as finding no ex post facto violation because the petitioner committed his misconduct after the change in the law, but he relies instead on broader statements in the opinion indicating that changes in sanctions for misconduct do not relate to the petitioner's original crime and thus are not retrospective under *Weaver* v. *Graham, supra,* 450 U.S. 24. Regardless of what may have been intended originally by these broader statements, they must now be interpreted in light of subsequent decisions of the United States Supreme Court, particularly *Lynce* v. *Mathis* (1997) 519 U.S. 433 [117 S.Ct. 891, 137 L.Ed.2d 63].

The Attorney General would distinguish both *Weaver* v. *Graham, supra,* 450 U.S. 24, and *Lynce* v. *Mathis, supra,* 519 U.S. 433 [117 S.Ct. 891], from the present situation on the ground that neither of those cases involved prison disciplinary regulations. Even though neither case involved prison disciplinary regulations, they are nevertheless relevant in that they involved the question of reducing credits that had been accumulated toward early release from prison.

*Weaver* v. *Graham, supra,* 450 U.S. 24, dealt with a statute that reduced the amount of good conduct credits that could be accumulated and deducted from a prisoner's sentence. The Supreme Court held that a reduction in the availability of good conduct credits violated the ex post facto clause when applied to prisoners who had been sentenced before the change in the law.

(*Id.* at pp. 35-36 [101 S.Ct. at p. 968].) Decreasing the amount of good time credits that can be earned substantially alters the consequences of a completed crime and changes the quantum of punishment. (*Id.* at p. 33 [101 S.Ct. at pp. 966-967].) "Thus, the new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment. This result runs afoul of the prohibition against *ex post facto laws.*" (*Id.* at pp. 35-36 [101 S.Ct. at p. 968], fn. omitted.)

The issue in *Lynce v. Mathis, supra,* 519 U.S. 433 [117 S.Ct. 891], was the Florida Legislature's cancellation of early release credits granted as a result of prison overcrowding. Beginning in 1983, the Florida Legislature enacted a series of statutes authorizing the award of early release credits to prison inmates when the state prison population exceeded specified levels. In 1986, the petitioner was convicted of attempted murder and given a 22-year prison sentence. In 1992, he was released based upon his accumulated credits, which included 1,860 days of provisional credits awarded as a result of prison overcrowding. (*Id.* at pp. 435-436 [117 S.Ct. at p. 893].) Shortly after the petitioner's release, the state attorney general issued an opinion interpreting a 1992 statute as having retroactively canceled all provisional credits awarded to inmates convicted of murder or attempted murder. The petitioner was therefore rearrested and returned to custody. The Supreme Court held that the 1992 statute canceling provisional release credits violated the ex post facto clause. (*Id.* at pp. 440-449 [117 S.Ct. at pp. 895-900].)

The Attorney General additionally asserts the *Weaver* analysis, in any event, was revised by the Supreme Court in *California Dept. of Corrections v. Morales, supra,* 514 U.S. 499, 506, footnote 3 [115 U.S. 1597, 1602]. *Morales* involved an amendment to our parole procedures which decreased the frequency of parole hearings for certain offenders if the parole board found it was unreasonable to expect that parole would be granted at a hearing during the subsequent years. (*Id.* at p. 507 [115 S.Ct. at p. 1602].) The court found no ex post facto violation because there "is no reason to conclude that the amendment will have any effect on any prisoner's actual term of confinement . . . ." (*Id.* at p. 512 [115 S.Ct. at p. 1604].) *Morales* did not discard the *Weaver* analysis. It merely refocused the analysis from whether a legislative change produces some ambiguous disadvantage to whether the change increases the penalty by which a crime is punishable. The *Morales* decision was filed two years before the decision in *Lynce v. Mathis,* which reaffirmed the *Weaver v. Graham* analysis by quoting it: "To fall within the *ex post facto* prohibition, a law must be retrospective—that is 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it' . . . by altering the definition of

criminal conduct or increasing the punishment for the crime, . . ." (*Lynce* v. *Mathis, supra,* 519 U.S. at p. 441 [117 S.Ct. at p. 896], quoting *Weaver* v. *Graham, supra,* 450 U.S. at p. 29 [101 S.Ct. at p. 964].)

 ██ Jackson and Lomax (respondents) argue that application of the revised statute and regulations to preclude credit restoration violates the ex post facto clauses of the United States and California Constitutions.[2] We agree. They are retrospective in that they increase punishment for acts that were committed before they took effect, and they disadvantage respondents by substantially lengthening their prison term.

The analysis set forth in *Weaver* and *Lynce* clearly refutes the Attorney General's claim that prison misconduct credit forfeiture and restoration regulations do not increase criminal sanctions and thus fall outside the ex post facto prohibition. *Weaver* directs us to look at the objective effect of the law: "[I]t is the effect, not the form, of the law that determines whether it is *ex post facto.*" (*Weaver* v. *Graham, supra,* 450 U.S. at p. 31 [101 S.Ct. at p. 965], fn. omitted.) It cannot seriously be disputed that the objective effect of the amendment is to lengthen respondents' terms of imprisonment by barring them from earning credit restoration through good behavior. This constitutes punishment. It is objectively no different from the statute in *Weaver* that was found violative of the ex post facto clause by retroactively reducing the amount of good time credits that prisoners could earn, thereby effectively postponing their release dates. The statute at issue in *Weaver* did not withdraw any credits that had already been awarded. By curtailing the availability of future credits, however, it effectively postponed the date Weaver could become eligible for early release. The court observed that the opportunity to earn credits is one determinant of a prison term and that a sentence effectively is altered once this determinant is changed. (*Weaver* v. *Graham, supra,* 450 U.S. at p. 32 [101 S.Ct. at p. 966].)

The analysis in *Lynce* likewise focuses on the objective effect of the amendment. The court rejected the state's attempt to inject legislative purpose into the analysis. The fact that the provisional credits were unrelated to the inmate's behavior was irrelevant, in the court's view, to the question of whether their cancellation had the effect of lengthening the petitioner's period of incarceration. The court also rejected the state's argument that the provisional credits bore no relation to the original penalty imposed: "To the extent that respondents' argument rests on the notion that overcrowding gain-time is not 'in some technical sense part of the sentence' [citation], this argument is foreclosed by our precedents. As we recognized in

[2]The California clause is interpreted the same as the federal ex post facto clause. (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 295 [279 Cal.Rptr. 592, 807 P.2d 434].)

*Weaver*, retroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the *Ex Post Facto* Clause because such credits are 'one determinant of petitioner's prison term . . . and . . . [the petitioner's] effective sentence is altered once this determinant is changed.' " (*Lynce* v. *Mathis, supra,* 519 U.S. at p. 445 [117 S.Ct. at p. 898].) The court reaffirmed this principle even though prisoners in Florida could not have expected at sentencing to receive any overcrowding credits, since they would accumulate only when certain overcrowding conditions occurred. It was enough that the statute resulted in an objective loss of credits and thereby increased the period of confinement. (*Ibid.*)

 The Attorney General's reliance on the difference in the underlying conduct at issue here is singularly unpersuasive in light of *Lynce*'s repeated emphasis on the objective effect as the determinative factor rather than the purpose of the legislation. The fact that prison misconduct is at issue does not serve to distinguish this case from *Graham* or *Lynce* for purposes of ex post facto analysis. The United States Supreme Court could not have been clearer in stating that the inquiry is not whether a prisoner has engaged in any particular conduct but instead whether the objective consequences of the change in the law lengthen the amount of time he must spend in prison. (*Lynce* v. *Mathis, supra,* 519 U.S. at pp. 442-444 [117 S.Ct. at pp. 896-897].)

Indeed, the only case to date that has dealt with these provisions, *In re Winner* (1997) 56 Cal.App.4th 1481 [66 Cal.Rptr.2d 333], impliedly agreed with our interpretation. The inmate in *Winner* committed his misconduct on January 23, 1996, after Penal Code section 2933 had been amended to give the director discretion whether to allow restoration of forfeited credits. The court found no retrospective effect and thus no ex post facto violation because the misconduct had been committed after amendment of the statute. "Accordingly, at the time of his prison misconduct, petitioner's right to reinstatement of forfeited credits was limited to that provided in Penal Code section 2933, i.e., he was not entitled to restoration of credits except at the discretion of the Director." (*In re Winner, supra,* 56 Cal.App.4th at p. 1487.) A necessary implication of the court's reasoning is that there would have been a retrospective effect had the misconduct been committed, as here, before amendment of the statute.

In the present case, we are compelled to conclude that the objective effect of the change in regulations here is to lengthen the period of time respondents must spend in prison. At the time they committed their disciplinary offenses they were eligible to obtain reinstatement of forfeited credits by remaining discipline-free for a specified period of time. The amendments to

the statute and regulations changed this structure and abolished the right to earn credit restoration. Thus, the effect as to respondents was to retroactively lengthen the period of time they must spend in prison. Accordingly, we find a violation of the ex post facto clause.[3]

## III. Disposition

The judgments (orders) are affirmed.

Haerle, J., and Lambden, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 22, 1998. Kennard, J., Baxter, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

[3]Respondent Jackson presents a brief substantive due process argument in the event that we find no ex post facto violation. Since it is an alternative argument, we need not address it.