Filed 4/19/16  P. v. Oubichon CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND LIONEL OUBICHON,<br><br>    Defendant and Appellant. | C073519<br><br>(Super. Ct. No. 62009078) |

Defendant Raymond Lionel Oubichon appeals from the trial court's order denying his petition for recall of sentence under Proposition 36, the Three Strikes Reform Act of 2012 (TSRA), Penal Code section 1170.126.  (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 601 [denial of petition is appealable]; unless otherwise set forth, statutory references that follow are to the Penal Code.)  Defendant argues that treating his current conviction for attempted criminal threat (§§ 422/664) as a serious felony -- rendering him ineligible for resentencing -- violates ex post facto principles because his crime was not on the

1

statutory list of serious felonies when he committed it. Defendant makes other arguments, but we need not address them because we conclude his current conviction renders him ineligible for section 1170.126 resentencing.

FACTS AND PROCEEDINGS

We granted defendant's request for judicial notice and take the underlying facts from our unpublished opinion in case No. C036914 (*Oubichon I*), nonpublished opinion filed December 9, 2002.

On May 2, 1999, defendant got into an argument with his wife Felisa Pena at their home. She went to the apartment manager and said defendant tried to choke or hit her. The manager called police. Pena told police defendant said that "if the cops didn't get him, he would come back and kill her." Defendant left the apartment complex but returned that night. Pena testified she was not scared when defendant returned. She made him sleep on the couch because she was angry. He had not laid a hand on her since 1994, when he struck her in the head.

The couple's cohabitation violated defendant's parole condition prohibiting him from having any contact with her since she was the victim of a terrorist threat conviction that had sent defendant to prison in 1995.

In May 2000, a jury found defendant guilty of making a criminal threat. The trial court found defendant had three prior serious felony convictions (§ 1170.12, subds. (a)-(d)) -- a 1979 juvenile adjudication for murder (§ 187), a 1986 assault with a deadly weapon (§ 245, subd. (a)), and a 1989 second degree robbery (§ 211) -- and sentenced him to a term of 25 years to life, plus two years for prior prison term enhancements, under the three strikes law.

On appeal, we reversed the criminal threat conviction due to insufficient evidence that the victim was afraid. We found the evidence sufficient for attempted criminal threat. In response to defendant's challenge to using the prior murder and assault with

2

deadly weapon as strikes, we found sufficient evidence that the assault qualified as a prior serious felony conviction under the three strikes law. But we found the evidence insufficient to support a similar finding regarding the 1979 juvenile adjudication for murder, because there was no evidence of how old defendant was when he committed the murder, and section 667, subdivision (d)(3) allows a juvenile adjudication to constitute a prior felony conviction for purposes of sentence enhancement only if the juvenile was 16 or older when he committed the offense. The evidence -- a rap sheet -- showed only that defendant was age 19 when arrested for the murder.

We reversed the judgment and gave the prosecution 60 days to elect to retry defendant for criminal threat on new evidence. If the prosecution elected not to retry defendant, we directed entry of judgment of conviction of attempted criminal threat. If the prosecution did not present additional evidence of the 1979 murder, the judgment was to reflect two, not three, prior serious felony convictions. In any event, the trial court was to conduct a new sentencing hearing.

The prosecution elected not to retry the underlying offense or the prior conviction.

The case came back to us for a second appeal (*Oubichon II*; C045022, unpub. opn. filed Nov. 9, 2004) after the new sentencing hearing, in which the trial court denied defendant's request to strike one of the two prior conviction enhancements in the interest of justice. (§ 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) At the hearing, defense counsel recounted defendant's criminal history. In 1986, he was convicted of assault with a deadly weapon for cutting a man in a bar fight. Defendant served 90 days in jail. His 1989 robbery conviction was for grabbing cash from a patron's hand in a liquor store. Defendant spent most of the 1990's in prison but maintained his parole violations were for one drug conviction, technical violations, and another offense against Pena.

The trial court stated that, while it could not consider the juvenile murder proceedings as a strike, it could consider defendant's entire record when determining

3

whether to exercise discretion. The court noted defendant was also sent to the CYA for a 1978 burglary adjudication. The strikes occurred in 1986 and 1989, followed by another assault conviction in 1990. In 1990, defendant transported a controlled substance. In 1995, defendant was sentenced to prison for threatening his wife. He violated parole in 1991, 1997, 1998, and 1999. The court concluded it would be an abuse of discretion to strike a serious felony conviction. The court sentenced defendant to 25 years to life for the attempted criminal threat and two years for prior prison terms.

In the second appeal, we held the trial court did not abuse its discretion in declining to dismiss a prior strike, in light of defendant's past criminal history and continuing criminal involvement. (*Oubichon II*, slip opn. pp. 5-7.)

On January 15, 2013, defendant filed a petition for recall of sentence under section 1170.126, asserting his current offense was not a serious or violent felony. The trial court issued an initial order on February 20, 2013, denying resentencing on the ground that the 1978 murder rendered defendant ineligible. Defendant filed a motion asking the court to "set aside" the denial of resentencing. The record does not reflect the prosecution's position.

On March 19, 2013, the trial court issued an "ORDER RE: RECONSIDERATION OF PRIOR ORDER DENYING PETITION FOR RESENTENCING," stating, "There are two reasons why the defendant does not qualify for relief under section 1170.126. [¶] The petition must be denied first because in his underlying criminal action, defendant was convicted of an attempted violation of section 422, making a criminal threat, a serious felony. Section 1192.7(c)(38) lists the making of a criminal threat a serious felony. Section 1192.79(c)(39) provides that any attempt to commit a listed serious felony is also a serious felony. Section 1170.126(b) expressly provides that resentencing is available only to inmates sentenced as third strike offenders for felonies **not** listed as serious or violent crimes. Defendant's underlying crime disqualifies him from relief under section 1170.126." (Orig. emphasis.)

4

The court went on to give the second reason, related to the murder, which we need not address because the first reason renders defendant ineligible for resentencing.

*The Current Offense Makes Defendant Ineligible for Resentencing*

This appeal presents a question of law, which we review de novo. (*People v. Cromer* (2001) 24 Cal.4th 889, 894.)

Section 1170.126, subdivision (b), provides: "Any person serving an indeterminate term of life imprisonment imposed pursuant to [the Three Strikes law] upon conviction, whether by trial or plea, of a felony or felonies *that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7*, may file a petition for a recall of sentence . . . or . . . to request resentencing in accordance with the provisions of [the Three Strikes law] as those statutes have been amended by the act that added this section [Proposition 36]." (Italics added.)

When defendant committed the offense of attempted criminal threat in 1999, it was not listed as a serious or violent felony. It became a serious felony in March 2000, when Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, added criminal threats to section 1192.7's list of serious felonies. (*People v. Johnson* (2015) 61 Cal.4th 674, 684 (*Johnson*).) Thus, since 2000, section 1192.7, subdivision (c)(38) makes a "criminal threat[], in violation of Section 422" a serious felony, and subparagraph (39) makes "any attempt to commit a crime listed in this subdivision other than an assault" a serious felony.

Defendant argues an interpretation of Proposition 36 that would characterize as a serious felony a current offense that was not characterized as a serious felony when committed, would violate ex post facto principles. We disagree.

The ex post facto clause of the federal Constitution (U.S. Const., art. I, § 10) prohibits legislation that (1) punishes as a crime an act that was not criminal when it was

5

committed, (2) makes more burdensome the punishment for a crime after its commission, or (3) deprives a defendant of any defense available according to law at the time the charged crime was committed. (*Collins v. Youngblood* (1990) 497 U.S. 37, 42 [111 L.Ed.2d 30].) The ex post facto clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.' " (*California Dept. of Corrections v. Morales* (1995) 514 U.S. 499, 504 [131 L.Ed.2d 588].) The same interpretation applies to California's ex post facto clause (Cal. Const., art. I, § 9). (*People v. Grant* (1999) 20 Cal.4th 150, 158.) As we said in *In re Efstathious* (2011) 200 Cal.App.4th 725, "For a criminal law to be ex post facto, (1) it must be *retrospective*, that is, it must apply to events occurring before its enactment, and (2) it must *disadvantage* the offender affected by it; that is, it must alter the definition of criminal conduct or increase the punishment for a crime. [Citations.] . . . 'The critical question . . . is whether the law changes the legal consequences of acts completed before its effective date.' [Citation.]" (*Id*. at p. 729.)

Applying the definitions of serious and violent felonies as they existed on November 7, 2012, to determine eligibility for resentencing does not punish an act that was not criminal when committed, does not make the punishment for the act more burdensome than it was when committed, and does not deprive defendant of any defense. Defendant's sentence is no more severe than the punishment authorized by law at the time he committed his crime.

While this appeal was pending, the California Supreme Court issued its opinion in *Johnson, supra*, 61 Cal.4th 674, which held *as a matter of statutory interpretation* that, for purposes of section 1170.126 resentencing in cases where the current crime was committed before Proposition 36's effective date of November 7, 2012, the classification of the current offense is based on the law in effect on November 7, 2012, not the law in effect when the crime was committed. (*Johnson*, *supra*, 61 Cal.4th at p. 679.) "[T]he use of the present tense in the provisions describing the nature of the current conviction

6

reflects an intent that the nature of the current conviction as serious or violent is based on its characterization as of the date of resentencing. In addition, the parallel structure of the Act's sentencing and resentencing provisions appears to contemplate identical sentences in connection with identical criminal histories, unless the trial court concludes that resentencing would pose an unreasonable risk to public safety. Finally, interpreting the scheme to allow resentencing despite the current classification of the offense as serious or violent is not supported by the arguments set forth in the ballot pamphlet. For these reasons, we hold that for purposes of resentencing under section 1170.126, the classification of the current offense as serious or violent is based on the law as of November 7, 2012, the effective date of Proposition 36." (*Johnson, supra*, 61 Cal.4th at p. 687.)

Since *Johnson* was decided as a matter of statutory interpretation (*id*., *supra*, 61 Cal.4th at p. 682) rather than ex post facto principles, it does not dispose of defendant's appeal. However, defendant fails to show an ex post facto violation.

Defendant overstates authority as holding that the critical determinant in ex post facto analysis is whether "the system itself ha[s] been altered to the prisoner's detriment." (*In re Ramirez* (1985) 39 Cal.3d 931, 936; *Weaver v. Graham* (1981) 450 U.S. 24 [67 L.Ed.2d 17] (*Weaver*).) *Weaver* found an ex post facto violation in a Florida statute that reduced the amount of credits prisoners could earn going forward. (*Weaver, supra*, 450 U.S. at p. 29.) The Florida statute was retrospective because it changed the "legal consequences" of crimes committed before its effective date and was part of the prisoner's "punitive conditions" even though not technically part of his sentence. (*Id*. at pp. 31, 32.) And the new statute disadvantaged the prisoner because he earned less credit for the same conduct and had to perform in a superior fashion for awards that were discretionary in any event. (*Id*. at p. 35.) It did not matter that the prisoner had control of his own behavior and could avoid the increased sanctions of the new plan. (*Id*. at p. 33.) *Ramirez, supra*, 39 Cal.3d 931, held that a new statutory plan reducing sentence credits

7

(§§ 2931-2932) was *not* an ex post facto violation when applied to existing prisoners. The *Ramirez* court felt compelled by *Weaver* to hold that the new plan disadvantaged the prisoner, even though the disadvantage stemmed from the prisoner's own actions. (*Id.* at pp. 935-936.) The critical determinant is whether "the system itself ha[s]been altered to the prisoner's detriment." (*Id*. at p. 936.) However, *Ramirez* went on to hold that, although the new plan disadvantaged the prisoner, it was not *retrospective* and therefore did *not* violate the ex post facto clauses, since the increased penalties were imposed solely because of prison misconduct occurring after the new plan became effective and were not attributable to the original crime. (*Id*. at pp. 936-938.)

Defendant's reliance on *Weaver* is questionable. Defendant fails to acknowledge the United States Supreme Court's more recent pronouncement (in 1995) that "*Weaver* [and other cases] suggested that enhancements to the measure of criminal punishment fall within the *ex post facto* prohibition because they operate to the 'disadvantage' of covered offenders. [Citations.] But that language was unnecessary to the results in those cases and is inconsistent with the framework developed in *Collins v. Youngblood*[, *supra*,] 497 U.S. [at p.] 41 . . . .) After *Collins*, the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor . . . on whether an amendment affects a prisoner's '*opportunity* to take advantage of provisions for early release,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." (*California Dept. of Corrections v. Morales*, *supra*, 514 U.S. at p. 506, fn. 3, orig. italics [California statute amending parole procedures to decrease frequency of parole suitability hearings did not violate ex post facto clause as applied to prisoner who was convicted before amendment].)

Under this standard, defendant's ex post facto claim fails. The provisions of section 1170.126 and the listing of crimes therein that constitute a serious felony do not "alter the definition" of defendant's criminal conduct nor do they "increase[ ]the penalty

by which [his] crime is punishable." (*California Dept. of Corrections v. Morales*, *supra*, 514 U.S. at p. 506, fn. 3.) The statute's provisions only make defendant ineligible for a reduction of his original sentence, that is, ineligible for a more lenient disposition of his original crime.

None of defendant's other cited authorities establish an ex post facto violation in this case. Defendant cites *People v. Ringo* (2005) 134 Cal.App.4th 870, which said, "Based upon the plain language of section 667, subdivision (a) [five-year sentence enhancement for any person convicted of serious felony who previously has been convicted of a serious felony], the crucial date for determining if a prior conviction qualifies as a serious felony is the date of the charged offense." (*Id*. at p. 884.) However, *Ringo* expressly stated the issue was one of statutory interpretation, not ex post facto principles, because the defendant conceded there was no ex post facto problem. (*Ringo, supra*, 134 Cal.App.4th at p. 882, fn. 8.)

Defendant cites *People v. Alvarez* (2002) 100 Cal.App.4th 1170, which found an ex post facto violation because the punishment under the one-strike law "exceeded the punishment appellant could have received under the applicable law when the [crime was] committed." (*Id*. at p. 1178.) Defendant also cites *People v. Williams* (1987) 196 Cal.App.3d 1157, which concluded the ex post facto clause barred application of amendments that would add 10 years to the sentence of a prisoner who committed his crimes before the amendments. Here, in contrast, the resentencing scheme adds nothing to defendant's sentence.

Defendant cites *People v. James* (2001) 91 Cal.App.4th 1147, where the appellate court found no ex post facto violation. That case involved application of Proposition 21's addition of offenses to the list of serious felonies for three strikes sentencing purposes, in a case where the current offenses were committed March 17, 2000 -- nine days after Proposition 21 took effect -- but the prior convictions were committed before it took effect. (*Id*. at p. 1149.) Though Proposition 21 made the designations retroactive, the

9

trial court struck prior conviction allegations for offenses committed before Proposition 21's effective date, on ex post facto grounds. The appellate court reversed, holding there was no ex post facto violation. In light of Proposition 21's purpose to increase public safety, the determination whether a prior conviction alleged as a serious felony is a prior strike must be based on whether the prior offense resulting in that conviction was a serious felony within the meaning of the three strikes law on the effective date of Proposition 21. (*Id*. at p. 1151.) Defendant also cites *Gonzales v. Superior Court* (1995) 37 Cal.App.4th 1302, which held -- in a prosecution for offenses committed after the effective date of the three strikes law (§ 667, subd. (d)(1)) -- that the statute applied to prior felony convictions which fit the definition of serious or violent felonies on the statute's effective date, even though they were not on the list at the time of the prior convictions.

Defendant thinks these cases stand for the proposition that "the ex post facto clauses are inapplicable to prior felony offenses, but apply to 'currently charged' ones." However, neither *James* nor *Gonzales* considered or decided the matter at issue in the case before us.

We conclude defendant is ineligible for section 1170.126 resentencing because his current offense is a serious felony. In light of our conclusion, we need not address defendant's other contentions.

DISPOSITION

The order denying defendant's petition for section 1170.126 resentencing is affirmed.

HULL                    , J.

We concur:

NICHOLSON        , Acting P. J.

BUTZ                  , J.

11