57 P.3d 630 (2002)
113 Wash.App. 822
In re the Personal Restraint Petition of Steven A. FORBIS, Petitioner.
No. 48625-0-I.
Court of Appeals of Washington, Division 1.
October 14, 2002.
Reconsideration Denied November 15, 2002.
*632 Kitteridge Oldham, Christopher Gibson, Nielsen Broman & Koch, Seattle, WA, for Petitioner.
Ronald A. Gomes, Assistant Attorney General, Olympia, WA, for Respondent.
*631 AGID, J.
When he was sentenced to prison in 1988, Steven Forbis was eligible to earn early release time, good conduct time, and dayroom privileges without having to participate in stress/anger management classes. The Department of Corrections later adopted DOC Policy 320.400 requiring inmates to participate in these classes if they wanted to continue earning early release and other credits. After Forbis refused to participate in the classes, DOC imposed sanctions, including a loss of earned early release credits. The issue here is whether DOC's application of the policy to Forbis violates the prohibition against ex post facto laws under the United States and Washington Constitutions. We hold that it does.
When DOC applied Policy 320.400 to Forbis, it increased the punishment for his offense by imposing retrospective punitive sanctions. The regulation was adopted after his conviction and requires him to satisfy additional conditions to receive the same sentence for that offense. As applied to him, it is therefore an ex post facto law. We grant Forbis' personal restraint petition and prohibit DOC from applying Policy 320.400 to him.

FACTS
On May 4, 1988, Steven Forbis was sentenced to a minimum term of 26 years and 8 months in the custody of the Department of Corrections for his first degree murder conviction. He is presently serving his sentence at the Washington State Penitentiary and was incarcerated there at the time of the prison disciplinary proceedings he now challenges.
In 1988, Forbis could earn early release time and dayroom and other privileges without participating in stress/anger management classes. The trial court did not impose these classes in the judgment and sentence, and when Forbis entered prison and was told how to avoid infractions and earn early release credits and other privileges, the requirement did not exist.
Beginning in 2000, DOC applied a new policy to Forbis requiring him to participate in stress/anger management classes to avoid loss of early release time and dayroom privileges. DOC imposed the classes under Policy 320.400, which authorizes its counselors to develop a case plan, including mandatory programming assignments. The current version of the policy, which was applied to Forbis, became effective on August 1, 1999. DOC contends that it has statutory authority to impose this requirement under former RCW 9.94A.132,[1] which was enacted in 1994.
On May 30, 2000, Mary Moss, Forbis' classification counselor, enrolled him in stress/anger management classes after an assessment indicated he needed them. He refused to participate because they were not ordered in his judgment and sentence. On *633 June 20, 2000, Forbis was sanctioned for this refusal by having five days of earned early release time credits removed. His administrative appeals of this sanction were denied.
In March 2001, Forbis was again enrolled in stress/anger management classes beginning on March 27 and April 2. When he refused to participate, DOC imposed a sanction of loss of 10 days good time, early release time for March 2001, and 30 days of dayroom privileges for his failure to participate in the March 27 class. It then imposed an additional sanction of loss of 30 days good time, early release time for April 2001, and 90 days of dayroom privileges for his failure to participate in the April class. Forbis' appeals of these sanctions were also denied.
Acting pro se, Forbis filed a personal restraint petition, asserting the application of Policy 320.400 and the resulting sanctions violated the constitutional protection against ex post facto laws. On October 10, 2001, this court ruled that Forbis had raised a non-frivolous issue and appointed counsel to brief the issue.

DISCUSSION
DOC Policy 320.400 provides in part that "[i]nmates who refuse to participate in programming to address identified risk/need factors will be subject to loss of earned time." Forbis maintains that the retroactive application of this policy to him increases his punishment for an offense committed before the policy and the law that authorizes it, former RCW 9.94A.132,[2] were enacted.
In order to obtain relief from a personal restraint petition, Forbis bears the burden of proving that he is presently restrained due to a constitutional error[3] and that more likely than not he was actually and substantially prejudiced by the claimed error.[4] To determine whether Forbis has been actually prejudiced, we must examine the merits of his constitutional claim.[5]
A statute is presumed constitutional, and the party challenging it has the burden of proving otherwise beyond a reasonable doubt.[6] The United States Constitution[7] and the Washington Constitution[8] prohibit the State from passing ex post facto laws.[9] A provision violates the Ex Post Facto Clause if it (1) disadvantages the person affected by increasing his or her punishment, (2) is substantive rather than merely procedural, and (3) is retrospective because it applies to events that occurred before its enactment.[10] "[T]he focus of the ex post facto inquiry is ... on whether a legislative change ... alters the definition of criminal conduct or increases the penalty by which a crime is punishable."[11]

Increase in Punishment
Forbis maintains that when DOC applied Policy 320.400 and former RCW 9.94A.132 to *634 him it increased his punishment because it reduced his ability to earn early release credits. He argues that Weaver v. Graham[12] controls. DOC contends that requiring Forbis to take stress/anger management classes and the loss of his earned early release credits resulting from his refusal to do so does not increase the punishment for his offense. It asserts there has been no change in the quantum of punishment imposed and Forbis incorrectly equates disciplinary sanctions with an increase in punishment. The Department's argument misses the point.
In Weaver, the United States Supreme Court held that the Ex Post Facto Clause prohibited the State from applying a statutory change reducing the opportunity to earn gain-time (early release credits) to a prisoner whose crime occurred before the change was enacted. The petitioner pleaded guilty to second degree murder in 1976 and was sentenced to 15 years. At that time, prisoners who did not commit prison infractions and satisfactorily performed their assigned tasks were eligible to earn reductions in their sentence at the rate of 5 days a month for the first and second years, 10 days a month for the third and fourth years, and 15 days a month thereafter. In 1978, the Florida Legislature enacted a new formula that allowed inmates to earn only three, six, and nine days respectively a month. Because the 1978 formula was used to calculate the gain-time of a prisoner convicted in 1976, the provision attached legal consequences to a crime committed before the law was enacted. The Weaver court concluded that the changes in the gain-time provisions changed the quantum of punishment for crimes committed before the provisions were enacted.
In reaching its conclusion, the Supreme Court rejected the argument that the gain-time provision was not part of the original sentence and therefore not part of the punishment imposed when the petitioner was sentenced.[13] And the fact that a prisoner might be able to earn the same amount of gain-time under the new system as under the old one did not change the fact that the new formula resulted in increased punishment.[14] The same gain-time was available, but in order to obtain it, the inmate had to satisfy additional conditions imposed by the new gain-time statute. While discussing Weaver in Lynce v. Mathis, the Court stated that "retroactive application of ... early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the Ex Post Facto Clause because such credits are `one determinant of petitioner's prison term ... and ... [the petitioner's] effective sentence is altered once this determinant is changed.'"[15]
The Washington Supreme Court followed Weaver in In re Personal Restraint of Smith.[16] There, the 1996 version of RCW 9.94A.150(1) imposed a 15 percent cap on earned early release time for serious violent Class A felonies, and those convicted of Class B felonies had their earned early release time capped at one-third. The Smith court concluded that an amendment applying the 15 percent cap to Class B felonies could not be retroactively applied to petitioners convicted before the amendment was enacted. Our Supreme Court stated:
Nor do we find that the amended language may be applied retroactively to petitioners. Retroactive application of a law violates the ex post fact clause if it increases the quantum of punishment for an offense after the offense was committed. A change in the law that limits eligibility for reduced imprisonment violates the ex post facto clause when applied to individuals whose crimes were committed before the law's enactment.[[17]]
*635 DOC attempts to distinguish Weaver and Smith, asserting they involve changes to the structure of an offender's prison sentence after the crime was committed whereas Forbis' earned early release was already set at one-third of his sentence. This is a distinction without a difference. As in those cases, the amount of time Forbis has to spend in prison is increased by the decision to require compliance with Policy 320.400. It is the effect of the retrospective law, not the form, which is at issue.[18]
DOC also claims Forbis has not cited any cases that equate a loss of earned early release time due to prison disciplinary sanctions with an ex post facto violation. Again, DOC misses the point. It mischaracterizes the issue by arguing that Forbis was sanctioned for active misbehavior. He was not. But for DOC's decision to apply the policy to Forbis, he would not have committed a prison infraction at all. As discussed below, there is a significant difference between reducing early release time after an inmate is sentenced and increasing sanctions for future infractions the inmate commits while incarcerated.[19]
In Stansbury v. Hannigan,[20] the Kansas Supreme Court held that applying amendments to an administrative rule to the petitioner violated the Ex Post Facto Clause. At the time petitioner was sentenced, absent disciplinary infractions, he would earn 80 percent of his available good time credits, with the remaining 20 percent subject to discretionary award. In 1993, after the petitioner committed the offense for which he was incarcerated, K.A.R. 44-6-124 was amended to provide that 100 percent of an inmate's good time would be withheld if he failed to sign an amended Sex Abuse Treatment Program (SATP) agreement. When petitioner refused to participate in the SATP, he lost 100 percent of his good time credits. The Stansbury court stated:
The result in the petitioner's case was to extend the time he would have to serve before being eligible for parole. Thus, the regulation as applied to the petitioner was retrospective in that it applied to events occurring before its enactment and it disadvantaged the offender affected by it.[[21]]
Accordingly, the Kansas Supreme Court held that application of the amendments to the petitioner violated the prohibition against ex post facto laws.
DOC relies on In re Ramirez[22] to support its position. There, the petitioner was incarcerated for a crime committed before the 1982 amendments went into effect on January 1, 1983. On that date, a new plan for awarding good time credits became effective, increasing the number of days to be forfeited for prison misconduct. The petitioner lost 48 days of early release credits for misconduct; under the old plan, he would have forfeited only 15 days. The California Supreme Court concluded that if it were not for the United States Supreme Court decision in Weaver, it "would be tempted to find any disadvantage stems from the petitioner's own action and that the 1982 amendments are not disadvantageous on their face."[23] But, because the impact of the amendments increased the punishment for misconduct by increasing the amount of good time lost, the court decided the changes were disadvantageous to the petitioner and held that the first part of the Weaver ex post facto test satisfied. DOC's reliance on Ramirez is misplaced.[24] The decision does not support DOC's position on the punishment prong of the ex post facto test.
*636 DOC also cites Hallmark v. Johnson[25] and State v. Ward[26] in support of its argument. Neither case is helpful. In Hallmark, Texas discontinued a discretionary policy that had allowed restoration of good time credits forfeited as a result of disciplinary sanctions. Although it was retrospective, the Fifth Circuit held that the policy change did not result in an increase in punishment because restoration of good time had always been discretionary. Even before the change, the good time credits might not have been reinstated, making any connection to increased punishment "attenuated and speculative."[27]Hallmark is inapposite because there was nothing attenuated or speculative about Forbis' ability to earn early release credits. Before Policy 320.400 was applied to him, Forbis' ability to earn early release credits was not discretionary.
In Ward, our Supreme Court held that the Community Protection Act, which required people who were previously convicted of sex offenses to register as sex offenders, does not violate the Ex Post Facto Clause because the registration requirement was regulatory and not punitive.[28] DOC's reliance on Ward is misplaced because the sex offender registration requirement is not part of the sentence imposed for the prior offense. It therefore cannot increase punishment for crime and, ipso facto cannot violate the Ex Post Facto Clause. Ward is not relevant to the issue Forbis' petition raises.
Because the time Forbis must serve on his criminal sentence is at issue, it plainly involves punishment. The changes resulting from the enactment and application of Policy 320.400 increase the quantum of Forbis' punishment because they reduce his ability to earn early release credits, extending the time he has to serve before being eligible for release. Accordingly, the first element of the ex post facto test is satisfied.

Substantive or Procedural
DOC maintains that its case management policy is procedural rather than substantive because it does nothing more than coordinate offender management and does not criminalize past or present acts, punish, or interfere with an inmate's substantive rights. A law does not violate the Ex Post Facto Clause if it is merely procedural.[29] Generally, a law is procedural if it is not criminal, punitive, or substantial.[30] But "by simply labeling a law `procedural,' a legislature does not thereby immunize it from scrutiny under the Ex Post Facto Clause."[31] Forbis does not challenge the administrative procedures under which he was sanctioned for refusing to participate in stress/anger management classes. Rather, he challenges the substantive law and policy that authorizes DOC to impose the classes and sanction him for refusing to attend.[32] As applied, Policy 320.400 affects Forbis' substantive right to earn early release credits.

Retrospective
Finally, Forbis must establish that the change in the law was enacted and applied to him after he was convicted. DOC contends that (1) it already had the general authority to require inmates to participate in stress/anger management classes before Forbis' incarceration and (2) former RCW 9.94A.132, the statute specifically authorizing stress/anger management classes, and Policy 320.400 are not retrospective on their face or as applied to Forbis. While DOC did have authority to require inmates to participate in other programs before Forbis' conviction, it did not have authority to require stress/anger management *637 classes until 1995, seven years after Forbis was sentenced, and the changes in the law are retrospective as applied to him.
DOC first argues that it has had authority under chapter 72.09 RCW to require inmates to participate in stress/anger management classes since 1981. Forbis counters that the statute on which DOC relies did not authorize it to require participation in stress/anger management classes. He contends that because former RCW 9.94A.132 specifically authorizes DOC to impose the classes, that statute would be meaningless if DOC already had the authority to do so. We agree.
In 1981, the Legislature determined that "[s]ince virtually all offenders return to the community, it is wise for the state and the communities to make an investment in effective rehabilitation programs for offenders and the wise use of resources."[33] To that end, the Legislature linked earned early release credits with an inmate's efforts to improve him or herself and follow prison rules.[34]
The department shall adopt a system for providing incentive for good conduct and disincentives for poor conduct. The system may include increases or decreases in the degree of liberty granted an inmate within the programs operated by the department and recommended increases or decreases in the number of earned early release days that an inmate can earn for good conduct and good performance. Earned early release days shall be recommended by the department as a form of tangible reward for accomplishment. The system shall be fair, measurable, and understandable to offenders, staff, and the public. At least once in each twelve-month period, the department shall inform the offender in writing as to his or her conduct and performance. This written evaluation shall include reasons for awarding or not awarding recommended earned early release days for good conduct and good performance. The term "good performance" as used in this section means successfully performing a work, work training, or educational task to levels of expectation as specified in writing by the department. The term "good conduct" as used in this section refers to compliance with department rules.[[35]]
In 1995, the Legislature amended RCW 72.09.130 as follows: "An inmate is not eligible to receive earned early release days during any time in which he or she refuses to participate in an available education or work program into which he or she has been placed under section 5 of this act."[36] Section 5, codified at RCW 72.09.460, discusses inmate participation in education and work programs. It provides in relevant part: "The program of education may include but not be limited to basic education, prevocational training, work ethic skills, conflict resolution counseling, substance abuse intervention, and anger management counseling."[37]
DOC also relies on former RCW 9.94A.132, adopted in 1994 in part to "[p]revent acts of violence by encouraging change in social norms and individual behaviors that have been shown to increase the risk of violence"[38] and to reduce the impact of violence on society that has "dramatically increased over the last decade."[39] DOC argues that this statute also authorizes it to impose stress/anger management programs to reduce violence through prevention. While we agree that it does, it is irrelevant to the issue here because it was enacted after Forbis was sentenced. Thus, we must determine whether chapter 72.09 RCW authorized those programs in 1988 when Forbis was sentenced.
We must assume the Legislature intended to accomplish something when it enacted specific legislation addressing *638 stress/anger management[40] and construe statutes to harmonize and give effect to each part of them.[41] It is difficult to escape the conclusion that, if DOC had the authority to impose anger/stress management programs under the 1981 laws, there would be no need to amend existing laws and enact new ones specifically permitting them to require stress/anger management training. Nothing in the statutes or legislative history supports the argument that these programs were permitted before Forbis' sentencing.
DOC next asserts that Policy 320.400 and former RCW 9.94A.132 are not retrospective as applied to Forbis because the classes were imposed based on his conduct while incarcerated. But this assertion is circular. Were it not for the adoption of the statutory amendment and the amended rules, Forbis' behavior would not be a basis for imposing sanctions. DOC's argument has been rejected by numerous courts. An example is Greenfield v. Scafati.[42] There, Massachusetts passed a statutory amendment that made prisoners who were returned to prison for a parole violation ineligible to earn early release time for six months. The State applied this new law to a prisoner who violated parole after the amendment was adopted, but was sentenced before it became effective. The Greenfield court concluded that application of the amendment to a person sentenced before its effective date violated the prohibition against ex post facto laws.[43] The fact that the parole violation occurred after the amendment was enacted was of no consequence because the petitioner would not be incarcerated and subject to the amendment's disability if it were not for the underlying offense.[44]
In United States v. Paskow,[45] the Ninth Circuit came to the same conclusion, holding that "it is an ex post facto violation to impose more severe punishment for a parole violation when the punishment is based on conduct that occurs after the statutory amendment that authorizes the more severe punishment" because the change was not in effect at the time the underlying offense was committed. It is the date of the underlying offense, not the date of the act that triggers the sanction, which determines whether a change is being applied retrospectively. Accordingly, requiring Forbis to attend stress/anger management classes and sanctioning him for refusing is a retrospective application of the law.
DOC cites Ramirez in support of its position that increases in sanctions for misconduct while incarcerated are not retrospective even when applied to inmates whose underlying offense occurred before the increase. But Ramirez is not on point. There, the increase in punishment was for affirmative acts of misconduct that occurred while the inmate was incarcerated, not a change in the programs in which inmates were required to participate to earn early release credits. In distinguishing Ramirez from Weaver, the California Supreme Court stated:
There is a critical difference between a diminution of the ordinary rewards for satisfactory performance of a prison sentencethe issue in Weaverand an increase in sanctions for future misbehavior in prisonwhich is at issue here. Here, petitioner's opportunity to earn good behavior and participation credits is unchanged. All that has changed are the sanctions for prison misconduct.... [[46]]
Ramirez demonstrates the difference between the prospective rule change challenged there and the issue here. Forbis' opportunity to earn early release credits has changed because he now has to satisfy an extra condition *639 to earn the same credits, while Ramirez was sanctioned for active misconduct. Forbis does not argue that he is immune from sanctions for affirmative misconduct while incarcerated. Rather, he asserts that he should continue to have the ability to earn early release credits without participating in the classes and being sanctioned for refusing to do so. We agree and therefore conclude that Forbis satisfied the retrospective prong of the ex post facto test.
We therefore grant Forbis' personal restraint petition and prohibit DOC from applying Policy 320.400 and former RCW 9.94A.132 to him, reverse the sanctions imposed for his refusal to participate in the classes, and direct DOC to reinstate Forbis' earned early release time.
APPELWICK, J., and KENNEDY, J., concur.
NOTES
[1] The statute was recodified at RCW 9.94A.580 by the Laws of 2001, ch. 10, § 6.
[2] Former RCW 9.94A. 132 provides:

The department is authorized to determine whether any person subject to the confines of a correctional facility would substantially benefit from successful participation in: (1) Literacy training, (2) employment skills training, or (3) educational efforts to identify and control sources of anger and, upon a determination that the person would, may require such successful participation as a condition for eligibility to obtain early release from the confines of a correctional facility.
[3] RAP 16.4(c).
[4] In re Hews, 99 Wash.2d 80, 89, 660 P.2d 263 (1983).
[5] In re Cook, 114 Wash.2d 802, 813, 792 P.2d 506 (1990).
[6] State v. Ward, 123 Wash.2d 488, 496, 869 P.2d 1062 (1994) (citing Diversified Inv. P'ship v. Dep't of Soc. & Health Servs., 113 Wash.2d 19, 23, 775 P.2d 947 (1989)).
[7] "No State shall ... pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility." U.S. Const. art. I, § 10, cl. 1.
[8] "No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed." Wash. Const. art. I, § 23.
[9] Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); State v. Schmidt, 143 Wash.2d 658, 672-73, 23 P.3d 462 (2001).
[10] Weaver, 450 U.S. at 29, 101 S.Ct. 960; Schmidt, 143 Wash.2d at 673, 23 P.3d 462.
[11] Cal. Dep't of Corrections v. Morales, 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).
[12] 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).
[13] Id. at 32, 101 S.Ct. 960.
[14] Id. at 35, 101 S.Ct. 960.
[15] Lynce v. Mathis, 519 U.S. 433, 445-46, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (quoting Weaver, 450 U.S. at 32, 101 S.Ct. 960).
[16] 139 Wash.2d 199, 986 P.2d 131 (1999).
[17] Smith, 139 Wash.2d at 207-08, 986 P.2d 131 (citing Weaver, 450 U.S. at 31-36, 101 S.Ct. 960) (citations omitted) (emphasis added).
[18] See Weaver, 450 U.S. at 31, 101 S.Ct. 960.
[19] See In re Ramirez, 39 Cal.3d 931, 705 P.2d 897, 901, 218 Cal.Rptr. 324 (1985), cert. denied, 476 U.S. 1152, 106 S.Ct. 2266, 90 L.Ed.2d 711 (1986).
[20] 265 Kan. 404, 960 P.2d 227, cert. denied, 525 U.S. 1060, 119 S.Ct. 629, 142 L.Ed.2d 567 (1998).
[21] Stansbury, 960 P.2d at 235.
[22] 39 Cal.3d 931, 705 P.2d 897, 218 Cal.Rptr. 324 (1985), cert. denied, 476 U.S. 1152, 106 S.Ct. 2266, 90 L.Ed.2d 711 (1986).
[23] Ramirez, 218 Cal.Rptr. 324, 705 P.2d at 900.
[24] The California Supreme Court ultimately concluded that the amendments were not retrospective because they applied only to events occurring after their enactment and the petitioner's misconduct was unconnected to his original crime.
[25] 118 F.3d 1073 (5th Cir.), cert. denied, sub nom. Monroe v. Johnson, 522 U.S. 1003, 118 S.Ct. 576, 139 L.Ed.2d 415 (1997).
[26] 123 Wash.2d 488, 869 P.2d 1062 (1994).
[27] Hallmark, 118 F.3d at 1079.
[28] Ward, 123 Wash.2d at 498-99, 869 P.2d 1062.
[29] Collins v. Youngblood, 497 U.S. 37, 44-46, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); State v. Schmidt, 100 Wash.App. 297, 301-02, 996 P.2d 1119 (2000), affirmed, 143 Wash.2d 658, 23 P.3d 462 (2001).
[30] Collins, at 44-46, 110 S.Ct. 2715.
[31] Id. at 46, 110 S.Ct. 2715.
[32] DOC does not dispute that former RCW 9.94A.132, the statute on which Policy 320.400 relies, is substantive.
[33] Laws of 1981, ch. 136, § 2(5), codified at former RCW 72.09.010(5). Recodified at RCW 72.09.010(6) by the Laws of 1995, 1st Sp. Sess., ch. 19, § 2.
[34] Id. at § 17, codified at RCW 72.09.130.
[35] Id.
[36] Laws of 1995, 1st Sp. Sess., ch. 19, § 6, codified at RCW 72.09.130.
[37] RCW 72.09.460(2).
[38] Laws of 1994 1st Sp. Sess., ch. 7, § 101.
[39] Id.
[40] State v. Keller, 143 Wash.2d 267, 278, 19 P.3d 1030 (2001), cert. denied, sub nom. Keller v. Wash., 534 U.S. 1130, 122 S.Ct. 1070, 151 L.Ed.2d 972 (2002) (quoting In re Personal Restraint of Sietz, 124 Wash.2d 645, 651, 880 P.2d 34 (1994)).
[41] City of Seattle v. Dep't of Labor & Indus., 136 Wash.2d 693, 698, 965 P.2d 619 (1998).
[42] 277 F.Supp. 644 (D.Mass.1967), aff'd sub nom. Scafati v. Greenfield, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968).
[43] Greenfield, 277 F.Supp. at 645-46.
[44] Id. at 646.
[45] 11 F.3d 873, 878 (9th Cir.1993).
[46] Ramirez, 218 Cal.Rptr. 324, 705 P.2d at 901.