74 P.3d 1189 (2003)
150 Wash.2d 91
In the Matter of the Personal Restraint Petition of Steven A. FORBIS, Respondent.
No. 73381-3.
Supreme Court of Washington, En Banc.
Argued June 12, 2003.
Decided August 21, 2003.
*1190 Christine Gregoire, Attorney General, John Samson, Assistant Attorney General, Aileen B. Miller, Olympia, for Petitioner/Appellant.
Kitteridge Oldham, Nielsen, Broman & Assoc., Christopher Gibson, Seattle, for Appellee/Respondent.
IRELAND, J.
Steven Forbis was convicted of first degree murder and is currently serving his sentence of 320 months in the Washington State Penitentiary. During his sentence, the Department of Corrections (DOC) implemented a policy in which inmates are screened to determine whether they would benefit from stress and anger management classes. Forbis was signed up for classes on three occasions. He refused to attend and was sanctioned by loss of earned release credits and privileges. He filed a personal restraint petition (PRP) alleging an ex post facto violation, which was granted by the Court of Appeals, Division One. We now reverse the Court of Appeals. Requiring Forbis to complete stress and anger management classes and sanctioning him for refusing did not violate the ex post facto clauses of the Washington and United States constitutions.

FACTS AND PROCEDURE
Forbis began serving his sentence on May 11, 1988. In 1993, the DOC instituted policy 320.400, a case management program aimed at "clearly articulat[ing] expectations for offenders while under the [DOC's] jurisdiction." Resp. of the DOC Ex. 9, at 1. The statutory grant of authority cited in the policy is the general authority of the secretary of corrections to direct the DOC, enacted in 1981 as RCW 72.09.050. In addition, a statute enacted in the 1994 special session authorized the DOC to determine which offenders would benefit from stress and anger management training. Laws of 1994, 1st Spec. Sess., ch. 7, § 533. Forbis's counselor assessed him and determined that he needed stress and anger management classes to assist him with "recognizing and effectively coping with his stress and anger in the correctional environment and in the community upon release." Resp. of the DOC Ex. 2, at 1, 3.
Forbis claims he was first enrolled in a stress and anger management class scheduled for May 2000. He refused to attend the class because it was not ordered by the court in his judgment and sentence. Forbis did not earn five days of his earned release credits. His administrative appeal was denied.
He was enrolled in a second class set for March 2001. When he again refused to attend, the DOC sanctioned him for an "infraction # 557," which is "[r]efusing to participate in an available education or work program or other mandatory programming assignment" under WAC 137-28-260(557). Pursuant to the April 6 hearing, he lost ten days of good time credits, his earned release credits for March 2001, and 30 days of dayroom privileges. His administrative appeal was denied, referencing DOC policy directive 320.400.
The third class Forbis refused to attend was scheduled for April 2001. Following his April 13 hearing, he lost 30 days of good time credits, his earned release credits for April 2001, and 90 days of dayroom privileges. Again, his administrative appeal was denied, with a reference to the policy directive. This *1191 was the last class for which he was scheduled. He was "unnassigned [sic] from the course" at that time. Resp. of the DOC Ex. 5.
In May 2001, Forbis filed his PRP, objecting to the requirement that he participate in stress and anger management classes. The Court of Appeals granted his PRP, prohibiting the DOC from applying the policy to Forbis. In re Pers. Restraint of Forbis, 113 Wash.App. 822, 838, 57 P.3d 630 (2002). The DOC filed a Motion for Discretionary Review with this court, which we granted on April 2, 2003.

ISSUE
Is it a violation of the ex post facto clauses of the Washington and United States Constitutions to require an inmate to attend stress and anger management classes, at the risk of losing earned release credits, under a policy enacted after the inmate was sentenced?

ANALYSIS
The constitutions of both the United States and Washington contain a prohibition against ex post facto laws. U.S. Const. art. I § 10; Wash. Const. art. I, § 23.[1] This prohibition applies to "penal statutes which disadvantage the offender affected by them." Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). The ex post facto prohibition forbids three categories of laws:
any statute [1] which punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

Beazell v. Ohio, 269 U.S. 167, 169-170, 46 S.Ct. 68, 70 L.Ed. 216 (1925). A law falls into the second category if it (1) disadvantages the person affected by the law by increasing the punishment and (2) is retrospectively applied to acts that occurred before the law was enacted. Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).[2]
In 1994, the legislature passed a statute authorizing the DOC to assess inmates to identify those who would benefit from specialized training and education. It states:
The department is authorized to determine whether any person subject to the confines of a correctional facility would substantially benefit from successful participation in: (1) Literacy training, (2) employment skills training, or (3) educational efforts to identify and control sources of anger and, upon a determination that the person would, may require such successful participation as a condition for eligibility to obtain early release from the confines of a correctional facility.

The department shall adopt rules and procedures to administer this section.
Laws of 1994, 1st Spec. Sess., ch. 7, § 533[3] (emphasis added). The DOC implemented policy 320.400, which calls for an inmate to be evaluated and assessed to develop an intervention plan, identifying what programming would be necessary. The policy states that "[i]nmates who refuse to participate in programming to address identified risk/need factors *1192 will be subject to loss of earned time." Resp. of the DOC Ex. 2, Att. 1.
Relying heavily on Weaver v. Graham, Forbis argues that subjecting him to policy 320.400 violates the prohibition against ex post facto laws. A change in the rate at which an inmate could earn credit for good conduct was held ex post facto in Weaver. 450 U.S. at 35-36, 101 S.Ct. 960. In that case, the Florida defendant pleaded guilty and was sentenced when the operative statute allowed inmates to earn "gain time" at the rate of five days per month in the first two years, ten days per month in the third and fourth years, and fifteen days per month in all subsequent years. Later, the Florida legislature enacted a new formula using three, six, and nine days.
The Court held that the new law lengthened the amount of time that inmates must remain in prison, even if they abided by the rules and performed assigned tasks as before. Weaver, 450 U.S. at 33, 101 S.Ct. 960. Although the statutory scheme did allow inmates to make up the difference by performing additional tasks, including taking part in educational programs, the Court stated:
[T]he statute reduces the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks. By definition, this reduction in gain-time accumulation lengthens the period that someone in petitioner's position must spend in prison.
Weaver, 450 U.S. at 33, 101 S.Ct. 960 (emphasis added). See also In re Ramirez, 39 Cal.3d 931, 936, 705 P.2d 897, 218 Cal.Rptr. 324 (1985) (changes to statute that increased amount of credits that could be lost met this portion of ex post facto test from Weaver). The change in the law increased the inmate's punishment.
The Weaver court also held that the statute was impermissibly retrospective when applied to inmates who had committed their crimes before the amendment because it "substantially alter[ed] the consequences attached to a crime already completed." Weaver, 450 U.S. at 33, 101 S.Ct. 960. Under Weaver, a law cannot "enhance the measure of punishment by altering the `formula' used to calculate the applicable [date for early release]." Calif. Dep't of Corr. v. Morales, 514 U.S. 499, 505, 518, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (interpreting Weaver). Weaver is distinguishable from this case because the formula for calculating the date for Forbis's early release remains the same.
The DOC may reduce the term of an offender's sentence by "earned release time" for "good behavior and good performance[] as determined by the correctional agency having jurisdiction." RCW 9.94A.728(1). The statutory maximum for earned release time is "one-third of the total sentence." Id. Under DOC procedures, "earned release time" is made up of "good time" and "earned time."
The record did not elucidate the differences between "good time" and "earned time," both of which were affected in Forbis's case. Counsel for the DOC stated at oral argument that "good time" is calculated at the beginning of the sentence and will be lost only if an inmate does not follow prison rules and regulations. "Good time" credit rewards "good behavior." "Earned time," on the other hand, is determined on a monthly basis depending upon whether an inmate completes assigned programming. "Earned time" rewards "good performance." An inmate's "good time" may be reduced if he fails to follow rules and regulations, and he may not be able to receive his "earned time" if he fails to successfully participate in assignments.
In Weaver, the statutory amendment completely altered the formula so that an inmate who met all prison requirements still could not earn credits at the former rate. Here the formula remains the same: an inmate gets the same amount of "good time" with good conduct and "earned time" with good performance. Forbis did not abide by the DOC's rules, for which he lost good time, or participate in his programming, for which he lost earned time.[4]
*1193 Forbis's further challenge under Weaver is meritless. He characterizes the classes as an "additional condition" on earned release time, which he claims is prohibited by Weaver as a law that "constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." Weaver, 450 U.S. at 35-36, 101 S.Ct. 960. The DOC has long had authority to require an inmate to take part in programming. In the Corrections Reform Act of 1981, the legislature directed the DOC to invest in "effective rehabilitation programs for offenders." Laws of 1981, ch. 136, § 2(5) (codified at RCW 72.09.010(6)). It also allowed the DOC to create "incentives for good conduct and disincentives for poor conduct." Laws of 1981, ch. 136, § 17. Therefore, the DOC could require participation in rehabilitative programs by sanctioning the "poor conduct" of those who refused to take part.
The legislature also authorized the DOC to structure programs that "reflect the values of the community." Laws of 1981, ch. 136, § 2(4) (codified at RCW 72.09.010(5)). Included in these values are:
(c) Providing opportunities for self improvement. All individuals should have opportunities to grow and expand their skills and abilities so as to fulfill their role in the community.
(d) Linking the receipt or denial of privileges to responsible behavior and accomplishments. The individual who works to improve himself or herself and the community should be rewarded for these efforts. As a corollary, there should be no rewards for no effort.
Laws of 1995, 1st Spec. Sess., ch. 19, § 2 (codified at RCW 72.09.010(5)(c), (d)) (emphasis added). These grants of authority clearly indicate that the DOC can create the programs and reward the inmates for taking part in them. Participation in programming is not an "added condition." The DOC has required Forbis to participate in programming, in order to get earned time, since the beginning of his incarceration.
Moreover, requiring Forbis to take part in stress and anger management classes does not increase his punishment. Whether a law imposes punishment is determined by a two-part test. See Hudson v. United States, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). First, the court asks whether the legislature intended the law to be civil or criminal. Id. (quoting United States v. Ward, 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Then, if the law was intended to be civil, the burden shifts to the prisoner to show by clearest proof that the effect of the law is so punitive that it becomes a criminal penalty. Id. at 99-100, 118 S.Ct. 488 (quoting Ward, 448 U.S. at 248-49, 100 S.Ct. 2636 and Rex Trailer Co. v. United States, 350 U.S. 148, 154, 76 S.Ct. 219, 100 L.Ed. 149 (1956)).
Here, the stress and anger management classes are meant to be rehabilitative. The classes are not scheduled to punish the inmates, but rather to help them cope in their environment, both in prison and postconfinement. This is a civil, rather than criminal, purpose. Shifting the burden to Forbis, he fails to show that the effect of requiring the classes is punitive. In fact, he acknowledges that training in anger management is a "rehabilitative component[]" of a prison sentence. Suppl. Br. of Resp't at 13 n. 9.
Finally, Forbis asserts that the DOC did not have authority to require his participation in this type of programming stress and anger management classes until well after his incarceration. Forbis argues that because the legislature did not specifically mention stress and anger management in the 1981 statutes, but in 1994 did pass the statute regarding such programs, the 1981 statute did not authorize these programs.[5] *1194 Citing the principle of statutory construction that the legislature does not engage in meaningless acts, Forbis argues that the 1994 statute would be superfluous if the 1981 statute already authorized the DOC to create the classes. Suppl. Br. of Resp't at 19. The Court of Appeals adopted this argument when it held that the DOC was retrospectively applying the new policy to Forbis. Forbis, 113 Wash.App. at 834, 57 P.3d 630.
We disagree with the Court of Appeals. The legislative purpose in enacting a statute which specifically refers to stress and anger management need not be deemed superfluous or meaningless even if the DOC already had authority to create such classes beginning in 1981. For instance, the legislature may have intended to call attention to this particular concern when it passed the 1994 statute. Another possible legislative purpose is to present the assessment method as the way to determine which inmates need programming.
In addition, as the DOC points out, the 1981 statute also gave the DOC authority to create "work training" programs. Suppl. Br. of Pet'r at 10 (citing RCW 72.09.130). The 1994 statute referred to "employment skills training." RCW 9.94A.580. By Forbis's reasoning, the 1994 reference to "employment skills training" would also be superfluous unless it were a new grant of authority. We do not accept this reasoning with regard to either employment skills training or stress and anger management training. The DOC was authorized to conduct both before Forbis's crime, conviction, and incarceration.

CONCLUSION
Although the statute and policy that specifically reference stress and anger management classes were enacted after Forbis committed his crime, they do not violate the ex post facto clauses of the constitutions of the United States and Washington. Neither the statute nor the policy retroactively increases Forbis's punishment by altering the formula by which Forbis can obtain earned release credits under RCW 9.94A.728(1). He and others in his position are still required to follow DOC rules and regulations to retain "good time" and complete mandatory programming to acquire "earned time." The stress and anger management programming is not a new condition that makes Forbis's sentence more onerous. Instead, it is simply another type of programming that the DOC has long been authorized to impose. Therefore, the Court of Appeals is reversed, and Forbis's personal restraint petition is dismissed.
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, JJ., concur.
NOTES
[1] The text of the United States Constitution's ex post facto clause ("No state shall ... pass any... ex post facto law ....") is comparable to that of Washington's ("No ... ex post facto law ... shall ever be passed."). Forbis does not argue that the provision in our state's constitution is more protective of defendants than the provision in the United States Constitution.
[2] A law may survive an ex post facto challenge if it is merely procedural (i.e., "changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes," Collins, 497 U.S. at 45, 110 S.Ct. 2715 that have no effect on "matters of substance," Beazell, 269 U.S. at 171, 46 S.Ct. 68). Collins, 497 U.S. at 44-46, 110 S.Ct. 2715. The Court of Appeals concluded that the statute and policy did affect Forbis's "substantive right to earn early release credits." Forbis, 113 Wash. App. at 833, 57 P.3d 630 (emphasis added). In its briefs to this court, the DOC does not challenge that conclusion or renew its argument, made to the Court of Appeals, that the policy is merely procedural.
[3] Codified as former RCW 9.94A.132 (1994). Recodified as RCW 9.94A.580 by Laws of 2001, ch. 10, § 6.
[4] Likewise, the out-of-jurisdiction cases Forbis cites in his briefs and Statement of Additional Authority simply follow Weaver. See, e.g., Britt v. Chiles, 704 So.2d 1046 (Fla.1997) (amendment to statute that made forfeiture of six months' eligibility to earn gain time mandatory violated Ex Post Facto Clause); Stansbury v. Hannigan, 265 Kan. 404, 960 P.2d 227 (1998) (amendment to statute that retrospectively altered the method by which good time credits were gained, lost, or withheld violated Ex Post Facto Clause). They are distinguishable on the same grounds: the laws at issue in those cases altered the formula used to calculate early release, but the laws at issue in this case do not.
[5] Forbis also suggests that, because the record shows the DOC relied on the 1994 statute and policy 320.400 to require Forbis to take the classes, the DOC believed it had authority only under the later statute. Suppl. Br. of Resp't at 18. As evidenced not only by the briefs, but also by the text of the policy, the DOC believes its authority is based on the former statute.